UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

WANDA ANDERSON, et al.                                                                                    PLAINTIFFS

VS.                                                                     CIVIL ACTION NO. 5:11cv103-DPJ-FKB

ENTERGY OPERATIONS, INC.                                                                               DEFENDANT

ORDER

This wage-and-hour dispute is before the Court on Defendant's Motion for Summary Judgment as to Plaintiff Larry D. Ward [27]. The Court, having considered the parties' submissions, finds that Ward should be judicially estopped from pursuing this claim. Defendant's motion is therefore granted.

I.     Facts and Procedural History

Defendant Entergy Operations, Inc., hired Plaintiff Larry D. Ward in July 2009. Defendant has allegedly treated Ward as an exempt employee—making him ineligible for overtime wages—since he was hired. While working for Defendant and not receiving overtime pay, Ward filed a Chapter 13 Bankruptcy Petition on December 12, 2010. Accompanying the petition, Ward also filed the necessary asset and liability schedules. On the schedule listing his personal property, Ward indicated he had no "contingent or unliquidated claims" of any nature. Def.'s Mot. [27] Ex. B, Schedules of Assets & Liabilities, at 4. Likewise, Ward's amended Schedule B, filed on January 7, 2011, also asserted that Ward's assets did not include a contingent or unliquidated claim. *Id.*, Ex. C, Amended Schedule, at 3.

Thereafter, the bankruptcy court entered an order on June 7, 2011, confirming Ward's Chapter 13 plan. And a little over a month later, Ward, along with several co-workers, filed this suit under the Fair Labor and Standards Act alleging Defendant violated the FLSA by incorrectly

classifying Ward and other employees as exempt from overtime pay.  Nearly one year after commencement of the FLSA case, Entergy moved for summary judgment against Ward.  Entergy argues that Ward is judicially estopped from pursuing this FLSA claim because he represented to the bankruptcy court that his assets did not include any contingent or unliquidated claims.  On June 26, 2012, after responding to Defendant's motion, Ward filed an amended Schedule B in his on-going bankruptcy case clarifying that his assets include an "overtime compensation claim against Entergy."  Pl.'s Supp. Mem. [37] Ex. A, Amended Schedule B, at 3.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.    Analysis

"The doctrine of judicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position,' particularly in situations where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'"  *Wells Fargo Bank, N.A., v. Oparaji (In re Oparaji)*, No. 11-20871, 2012 WL 4748957, at *3 (5th Cir. Oct. 5, 2012) (quoting *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008); *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)).  This doctrine is an equitable one, "'invoked by a court at its discretion' to 'protect the integrity of the judicial process.'"  *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)).  And "[b]ecause the doctrine is intended to protect the judicial system, *rather than the litigants*, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary."  *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 205 (5th Cir. 1999) (emphasis in original) (citations omitted).

To determine whether to apply judicial estoppel, the Fifth Circuit has instructed courts to look for the following elements:  "'(1) the party against whom judicial estoppel is sought has

3

asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently.'" *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (quoting *Reed*, 650 F.3d at 574). But these factors do not represent "inflexible prerequisites or an exhaustive formula," because "different considerations 'may inform the doctrine's application in specific factual contexts.'" *Reed*, 650 F.3d at 574 (quoting *New Hampshire*, 532 U.S. at 751) (one citation omitted).

  Application of judicial estoppel in the bankruptcy context necessitates a sensitivity to the duties and goals of the overarching bankruptcy system. *See Reed*, 650 F.3d at 574 ("[J]udicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate."). And "[i]t goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats)*, 374 F.3d 330, 335 (5th Cir. 2004) (quoting *Coastal Plains*, 179 F.3d at 207–08) (emphasis in original); *see also* 11 U.S.C. § 521(a)(1).

  This duty to disclose is on-going throughout the duration of the bankruptcy. *Superior Crewboats*, 374 F.3d at 335 (citing *Coastal Plains*, 179 F.3d at 207–08); *see also Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (noting an on-going duty to disclose in Chapter 13 cases). Given this duty, the Fifth Circuit has repeatedly stated that "'[j]udicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy

court, but then pursues a claim in a separate tribunal based on that undisclosed asset.'" *Love*, 677 F.3d at 261–62 (quoting *Jethroe*, 412 F.3d at 600).

Ward does not challenge Defendant's assertion that the first and second judicial-estoppel elements are satisfied. Indeed, in many respects the circumstances in this case are indistinguishable from published Fifth Circuit cases. *See Love*, 677 F.3d at 260–61, 263 (debtor with pending Chapter 13 bankruptcy at the time of filing race-discrimination and retaliatory discharge suit judicially estopped for failure to disclose claims); *Jethroe*, 412 F.3d at 599 (debtor did not disclose Title VII claim in Chapter 13 bankruptcy that was pending when debtor filed suit); *see also Kamont v. West*, 83 F. App'x 1, 2–3 (5th Cir. 2003) (unpublished) (Chapter 7 debtor discharged 11 days before filing suit judicially estopped for failure to disclose potential claim or multiple EEOC filings).

First, it was plainly inconsistent for Ward to represent to the bankruptcy court that he owned no contingent or unliquidated claims but then later pursue such a claim in a different court. *Jethroe*, 412 F.3d at 600 (finding debtor who made several appearances before bankruptcy court in on-going Chapter 13 case concealed her claim). And because of the ongoing duty to report, Ward asserted a plainly inconsistent legal position not only when he initially failed to disclose, but also when he failed to supplement his bankruptcy schedules after filing this FLSA case. *See Kamont*, 83 F. App'x at 3 ("Kamont filed her fourth claim while the bankruptcy was pending, triggering a duty to amend her [Chapter 7] bankruptcy petition." (citation omitted)).

Second, the bankruptcy court accepted Ward's position when it confirmed his Chapter 13 plan on June 7, 2011. Def.'s Mot. [27] Ex. D, Order Confirming Plan. The adoption element of judicial estoppel "does not require a formal judgment; rather, it only requires 'that the first court

has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition.'" *Superior Crewboats*, 374 F.3d at 335 (quoting *Coastal Plains*, 179 F.3d at 206). "This requirement is satisfied where a bankruptcy court has confirmed a debtor's bankruptcy plan in reliance on the veracity of his asset schedules." *Lejeune v. Turner Indus. Group, LLC*, No. 11-1238, 2012 WL 1118631 (E.D. La. Apr. 3, 2012) (citing *Jethroe*, 412 F.3d at 600); *see Jethroe*, 412 F.3d at 600 ("[The bankruptcy] court certainly confirmed Jethroe's plan at least in part based on its assessment of her assets and liabilities." (citing *Coastal Plains*, 179 F.3d at 210)). At the time the bankruptcy court confirmed Ward's plan, it undoubtedly did so with some reliance on Ward's scheduled assets and debts, which up until June 26, 2012, did not disclose the FLSA claim. A court therefore accepted Ward's prior position that he had no contingent or unliquidated claims.

      Finally, Ward's inconsistent position was not inadvertent. In the bankruptcy context, "the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Love*, 677 F.3d at 262 (quoting *Coastal Plains*, 179 F.3d at 210) (some internal quotations omitted). The lack of knowledge that is relevant for this inquiry is not the debtor's awareness of a duty to report the claim, but whether the debtor lacked knowledge of the facts giving rise to the contingent or unliquidated claim. *Jethroe*, 412 F.3d at 601 ("Jethroe must show not that she was unaware that she had a duty to disclose her claims but that, at the time she filed her bankruptcy petition, she was unaware of the facts giving rise to them." (citing *Coastal Plains*, 179 F.3d 211–12)).

6

Starting with Ward's knowledge, Entergy points out that Ward surely knew he never received overtime pay.  Def.'s Mem [28] at 7.  And as to the frequency of Ward's overtime hours, the complaint states the plaintiffs, including Ward, "routinely work[ed] and [were] scheduled to work hours in excess of 40 hours per week."  Second Am. Compl. [17] ¶ 12.  Ward nonetheless asserts that his non-disclosure was inadvertent because his claim "is not a clear-cut cause of action, and instead, is the type of action that requires detailed legal advice and analysis."  Pl.'s Resp. [30] at 3.  Ward has provided the court with nothing more than argument of counsel, which is insufficient to create a question of fact as to Ward's inadvertence.[1]  *Love*, 677 F.3d at 262 (holding that burden shifted to plaintiff after motive was established and noting that "[w]hether a debtor's failure to disclose claims was inadvertent presents a question of fact" (citing *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275 (11th Cir. 2010)).  Despite questions about Ward's knowledge when he filed his bankruptcy petition, an inference can be drawn that at the time the plan was confirmed, Ward had knowledge of the FLSA claim that would be filed less than five weeks later.

---

[1] Ward also has not provided the Court with any authority supporting his argument that the complexity of FLSA claims has a bearing on the application of judicial estoppel.  While it may be true that FLSA claims are not as straight-forward as other claims, such as for sexual harassment, courts outside of the Fifth Circuit have reached different conclusions when facing similar arguments.  *Compare In re Family Dollar FLSA Litig.*, No. 3:08 MD 1932, 2011 WL 4899972, at *3 (W.D.N.C. Oct. 14, 2011) ("[N]otwithstanding Slater's declaration, her Complaint establishes that she had the requisite knowledge of her [FLSA] claims . . . ."), *and Gaskins v. Thousand Trails*, 521 F. Supp. 2d 693, 697 (S.D. Ohio 2007) (finding sufficient basis to disclose in pre-lawsuit bankruptcy petition where complaint alleged "Plaintiff 'regularly' worked more than 40 hours per week"), *with Sovik v. Ducks Unlimited, Inc.*, No. 3:11-CV-0018, 2011 WL 1397970, at *3–4 (M.D. Tenn. Apr. 13, 2011) (noting that although plaintiff obviously "knew the relevant facts regarding his hours and duties," it "does not necessarily follow that he knew that [his employer] owed him overtime compensation" under the FLSA).

Regardless of his knowledge prior to filing this FLSA lawsuit, Ward at least had notice of his claim when the lawsuit was filed on July 11, 2011.  Although Ward's bankruptcy case was still pending at that time, Ward did not amend his Schedule B form listing his personal property until prompted by Defendant's motion in this case, some 11 months after confirmation of Ward's plan.  The concurrence of Ward's bankruptcy with the filing of this FLSA case and the nearly one-year lapse prior to disclosure both undercut Ward's inadvertence argument.  *See Jethroe*, 412 F.3d at 600 ("A plaintiff is judicially estopped from pursuing an EEOC charge filed while his bankruptcy petition was pending and where he did not fulfill his duty to amend the petition to include that claim." (citing *Kamont*, 83 F. App'x at 3)).  "The obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one," and by failing to do so Ward continued to represent to the bankruptcy court that he had no contingent or unliquidated claims.[2] *Id.* (citing *Coastal Plains*, 179 F.3d at 207–08).

Turning then to motive, Ward also fails to rebut Defendant's inference that "the potential for civil damages he can keep for himself rather than use to pay creditors" created a motive for Ward to conceal his FLSA claim.  Def.'s Mem. [28] at 7.  The Fifth Circuit has recognized that "'the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court.  Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure.'" *Love*, 677 F.3d at 262 (quoting *Thompson v. Sanderson Farms, Inc.*, No. 3:04CV837-WHB-JCS, 2006 U.S. Dist. LEXIS 48409, at *12–13

---

[2]This conclusion is unchanged by Ward's assertion that he was unaware of his duty to report, which is irrelevant to the inadvertence analysis. *Kamont*, 83 F. App'x at 3 ("A lack of awareness of the statutory disclosure duty is simply not relevant to the question of judicial estoppel." (citing *Coastal Plains*, 179 F.3d at 212)).

(S.D. Miss. May 31, 2006)).  Under his June 26, 2011 plan, Ward is only required to repay a minimum of 25% of his unsecured debt.  Def.'s Mot. [27] Ex. D, Order Confirming Plan, at 5.  Had Ward disclosed this claim as part of his assets, he might have had to repay a greater percentage of the unsecured debt.  *See Jethroe*, 412 F.3d at 601 (noting debtor had an incentive to conceal the claim so as to minimize repayment of unsecured debt).  Thus, the inference of a motive to conceal is fitting in this case.

Finally, Ward's argument that he had no motive to conceal because of a newfound desire to disclose the claim by amending his asset schedule has recently been rejected by the Fifth Circuit.  As the court in *Love* made clear, "'[w]hen reviewing potential motive, the relevant inquiry is intent as the time of non-disclosure,'" not at the later time when a party raising judicial estoppel has essentially forced the disclosure.  *Love*, 677 F.3d at 263 (quoting *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275 (11th Cir. 2010)).  "Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them."  *Superior Crewboats*, 374 F.3d at 336 (brackets in original) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002).  Although Ward has provided the Court with a basis to assess his motive to conceal *now*, this "post-disclosure conduct again fails to speak to his motivations while he was obligated to disclose his claims but had not yet done so."  *Love*, 677 F.3d at 263.  Ward has therefore provided the Court with no

basis to conclude that he lacked a motive to conceal, and accordingly Ward's non-disclosure of this FLSA claim was not inadvertent.[3]

IV.     Conclusion

The Court has considered all of the arguments presented in the parties' briefs.  Those arguments not addressed were either unsupported in law or fact or would not change the result of this Order.  Based on the foregoing, the Court finds that Ward should be judicially estopped from pursuing his FLSA claim and that Defendant's motion [27] is therefore granted.

**SO ORDERED AND ADJUDGED** this the 5th day of November, 2012.

                                              s/ *Daniel P. Jordan III*
                                              UNITED STATES DISTRICT JUDGE

---

[3] Ward also requests the Court to exercise discretion and decline to apply judicial estoppel based on a cautionary statement in the *Love* opinion: "We do not mean to diminish the weight that courts should give to creditors' interests when determining whether judicial estoppel should apply." 677 F.3d at 266. But this caveat appears to be principally directed at the *Reed* and *Kane* line of cases, in which the Fifth Circuit held that judicial estoppel would not apply to an innocent trustee pursuing a cause of action that was the property of a Chapter 7 estate. *See Love*, 677 F.3d at 266 (citing *Reed*, 650 F.3d at 574–75; *Kane*, 535 F.3d at 383–84). Ward, unlike the debtors in those cases, is pursuing his FLSA claim independent of any trustee or creditor oversight, and nothing in the parties memoranda suggests anything will prevent Ward "from realizing any gains at all on claims he had not timely disclosed to his creditors." *Id.* (citing *Reed*, 650 F.3d at 573). Thus, the Court sees no reason here to exercise discretion.